IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


INDUSTRIAL MAINTENANCE SOLUTIONS, LLC,
BRYAN S. HENRY,
NOVA 1 PROPERTIES, LLC, and
TAMMY HENRY,

      Plaintiffs,

    v.                                    CIVIL NO. 1:22-CV-12
                                            (KLEEH)

LUCKEY ENTERPRISES, LLC,
BRYAN BULLERDICK, and
ASHLEY S. BULLERDICK,

      Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

Pending before the Court is Defendant Ashley S. Bullerdick's motion to dismiss the third supplemental complaint as it pertains to her.  For the reasons discussed herein, the motion is **GRANTED**.

### I.  INTRODUCTION AND PROCEDURAL HISTORY

In this case, the Plaintiffs, Industrial Maintenance Solutions, LLC ("IMS"), Bryan S. Henry ("Bryan Henry"), Nova 1 Properties, LLC ("Nova 1"), and Tammy Henry ("Tammy Henry") (together, "Plaintiffs"), have alleged that the Defendants, Luckey Enterprises, LLC ("Luckey"), Bryan Bullerdick ("Bryan Bullerdick"), and Ashley S. Bullerdick ("Ashley Bullerdick")

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

(together, "Defendants"), have breached several contracts, engaged in unfair business practices, misappropriated and infringed upon IMS's intellectual property, and engaged in defamation. Plaintiffs' allegations relate to BGSE Group, LLC's acquisition of the manufacturing division of IMS for aviation ground support equipment.

The case was first removed to this Court on February 3, 2022. See ECF No. 1.  The named defendants were BGSE Group, LLC ("BGSE"), Luckey, and Bryan Bullerdick.  On January 9, 2023, BGSE filed a *Notice of Bankruptcy and Automatic Stay of Proceedings*.  See ECF No. 68.  On January 10, 2023, the Court stayed the case and vacated the scheduling order.  See ECF No. 69.  On July 24, 2023, the Court lifted the stay as to all parties except BGSE.  See ECF No. 76. On November 15, 2023, after obtaining leave of the Court, Plaintiffs filed a first supplemental complaint.  See ECF No. 88. The first supplemental complaint alleged claims against only Bryan Bullerdick and Luckey.  See id.

On April 26, 2024, Plaintiffs filed a motion for leave to file a second supplemental complaint.  See ECF No. 113.  The proposed second supplemental complaint named Bryan Bullerdick, Luckey, and Ashley Bullerdick as defendants.  See ECF No. 113-3. In July 2024, after the Court was notified that the parties had "reached agreement on the amount of settlement of all claims," the

IMS V. LUCKEY ET AL.                                          1:22-CV-12

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]

Court terminated the motion for leave to file the second supplemental complaint without ruling on the motion.  See ECF Nos. 120, 121.  After multiple extensions of Court orders directing the parties to file a proposed dismissal order, the parties ultimately opted to file a proposed schedule.  See ECF Nos. 125, 129, 133, 135, 140.  On January 23, 2025, the Court entered a scheduling order, which has since been stayed.  See ECF No. 140.

On May 14, 2025, after obtaining leave of the Court, Plaintiffs filed a third supplemental complaint.  See ECF No. 161. In the third supplemental complaint, Plaintiffs assert claims against Bryan Bullerdick, Luckey, and Ashley Bullerdick.  See id. At a minimum, Plaintiffs bring claims of fraudulent inducement, civil conspiracy, defamation, and plundering the BGSE estate.  Some of the claims are not labeled, and it is unclear what additional claims are being raised (and against whom they are raised).  Now pending is a motion to dismiss by Ashley Bullerdick.  It is fully briefed and ripe for review.

### II.  STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal for lack of personal jurisdiction.  "[A] defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal

IMS V. LUCKEY ET AL.                                          1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

jurisdiction at every stage following such a challenge." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350 (4th Cir. 2020) (citation and internal quotation marks omitted). "In considering whether a plaintiff has met his burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." Id. (citation omitted). "A court must also construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (citation and internal quotation marks omitted). With respect to a motion to dismiss for lack of personal jurisdiction, "[t]he allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true." Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, No. 5:09-CV-00467, 2012 WL 1112162, at *4 (S.D.W. Va. Mar. 30, 2012) (Johnston, J.) (citing Wolf v. Richmond Cty. Hosp. Auth., 745 F.2d 904, 907 (4th Cir. 1984)).

### III. FACTUAL BACKGROUND

IMS is a leading manufacturer of aviation ground support equipment for a number of different entities, including BGSE. Third Supp. Compl., ECF No. 161, at ¶ 1. Bryan Henry is the founder and president of IMS. Id. ¶ 2. He also founded the

IMS V. LUCKEY ET AL.                                    1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

company Nova 1, which is affiliated with IMS with respect to real estate transactions. Id. ¶ 3. Tammy Henry is an officer of IMS, a contractor, and Bryan Henry's wife. Id. ¶ 4. BGSE is a North Carolina limited liability company. Id. ¶ 5. Bryan Bullerdick is the owner of BGSE, and he founded Luckey for the purposes of purchasing and selling real estate. Id. ¶¶ 6, 7.

BGSE has contracted with IMS since 2017, and IMS was its principal manufacturer for aviation ground support equipment. Id. ¶ 11. Although BGSE represented that it was a company with extensive engineering and manufacturing experience, prior to the acquisition, BGSE depended entirely on third-party contractors, including IMS, for engineering, design, and manufacturing capabilities. Id. ¶ 12. Plaintiffs assert that BGSE had established a pattern of using other entities' engineering, design, or manufacturing resources and then reselling or distributing such products as its own. Id. ¶ 13.

BGSE purchased and owned property in Morgantown, West Virginia; leased and operated a manufacturing facility in Monongalia County, West Virginia; and did business in West Virginia. Id. ¶ 14. Plaintiffs assert that in or around 2019, BGSE came under increasing pressure to demonstrate that it was the true manufacturer of products and that it had manufacturing facilities and capabilities. Id. ¶ 15. Plaintiffs assert that

IMS V. LUCKEY ET AL.                                                    1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

BGSE and "the Bullerdicks" formulated a scheme whereby BGSE would purchase the manufacturing division of IMS for aviation ground support equipment, including, but not limited to, IMS's equipment and employees, so that it could represent and demonstrate to customers that it was the true manufacturer of its aviation ground support equipment.  Id. ¶ 17.  Plaintiffs assert that BGSE and "the Bullerdicks" then made such a purchase proposal to IMS.  Id. ¶ 18.

In response to the proposal, Bryan Henry insisted that BGSE (1) purchase certain IMS equipment, (2) hire IMS employees at certain hourly rates, (3) rent certain equipment at IMS's Morgantown facility, and (4) hire him as the General Manager of the new manufacturing division for BGSE at a salary of $100,000.00 per year and for a guaranteed five-year period.  Id. ¶ 19.  On May 18, 2020, the parties reached an agreement.  Id. ¶ 20.  BGSE agreed to purchase certain IMS assets for $193,000.00.  Id. ¶ 21.  BGSE also agreed to hire all IMS employees and to lease a powder coating facility from Nova 1.  Id. ¶¶ 22, 23.  BGSE agreed to hire Bryan Henry as General Manager of the manufacturing division of BGSE for a guaranteed five-year term, with a base salary of $80,000.00 per year and a guaranteed annual bonus of $20,000.00 per year, along with benefits plans and a commission/bonus plan.  Id. ¶ 24.  BGSE agreed that Bryan Henry could continue to operate IMS and that

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY
BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

"any such work, invention or intellectual property developed solely by IMS [would] remain the sole property of IMS." Id. ¶ 25.

BGSE agreed to purchase certain real property of Nova 1 through Luckey, which was intended to be the new site of BGSE's manufacturing division. Id. ¶ 26. As part of that sale, Luckey agreed to extend, at its sole cost and expense, certain utilities and stormwater lines to a mutually agreeable location. Id. ¶ 27. Plaintiffs assert that despite the promises made, BGSE, Luckey, Bryan Bullerdick, and Ashley Bullerdick did not have the resources to comply with their obligations. Id. ¶ 29. Plaintiffs assert that "they" did not timely pay for IMS equipment; failed to pay salary and bonuses owed to Bryan Henry; unilaterally attempted to change Bryan Henry's duties and responsibilities; terminated Bryan Henry's employment with BGSE in bad faith; made defamatory statements concerning Bryan Henry and IMS to third parties in an attempt to damage their character, reputation, and business relations; failed to pay Tammy Henry $5,000.00 for the use of her Contractor's License; misappropriated the intellectual property of IMS and Bryan Henry without compensation; failed to perform agreed-to utility extensions; failed to pay rents due and owing for the powder coating equipment; converted personal property of Bryan Henry and IMS; failed to pay for various equipment rentals; failed to return certain software developed, designed, and owned by Bryan

IMS V. LUCKEY ET AL.                                                    1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

Henry and/or IMS; failed to return license to IMS and/or Bryan Henry for 3-D SOLID WORKS software that IMS purchased for and at the request of BGSE; sold certain equipment obtained from IMS and personally profited; took excessive fees, salaries, and compensation that depleted the cash flow of BGSE; continued their practices of not timely paying vendors and creditors; misstated the financial condition of BGSE; and deprived IMS of the ability to manufacture aviation ground support equipment by refusing to compensate Bryan Henry as promised but keeping the equipment, employees, and intellectual property of IMS. Id.

Plaintiffs assert that when BGSE, Bryan Bullerdick, and Ashley Bullerdick formulated their fraudulent scheme to induce Bryan Henry and IMS to sell the manufacturing division, they knew that they did not have the funds and resources to fulfill their obligations. Id. ¶ 31. Immediately after the acquisition, BGSE failed to pay IMS for its equipment on time. Id. ¶ 32. In addition, Bryan Bullerdick and BGSE had to use the good credit of IMS to purchase raw products required for manufacturing because vendors refused to extend credit to BGSE. Id. ¶ 33. When Bryan Henry reported vendor complaints to Bryan Bullerdick and demanded that BGSE and Bryan Bullerdick pay IMS the bonuses, commission, and profits due, Bryan Bullerdick unilaterally changed the organizational structure of BGSE, in violation of Bryan Henry's

IMS V. LUCKEY ET AL.                                    1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

employment agreement, but kept the equipment, employees, and intellectual property of IMS.  Id. ¶ 34.

Plaintiffs assert that Bryan Bullerdick began a pattern of verbally abusing Bryan Henry.  Id. ¶ 35.  They assert that "the Bullerdicks" and BGSE unilaterally terminated Bryan Henry's position as General Manager and terminated his five-year employment agreement without cause, essentially preventing IMS from manufacturing aviation ground support equipment.  Id. ¶ 36. Bryan Bullerdick offered Bryan Henry a new at-will position with BGSE for $100,000.00, with no bonuses or commissions.  Id. ¶ 37. Bryan Henry pointed out that this was a direct violation of the five-year employment agreement, and he offered to renegotiate the employment agreement.  Id. ¶ 38.  Plaintiffs assert that BGSE and "the Bullerdicks" refused to renegotiate.  Id. ¶ 39.

Plaintiffs assert that Ashley Bullerdick (Bryan Bullerdick's wife) was directly and actively involved in BGSE's and Luckey's unlawful actions.  Id. ¶ 9.  They assert that she was the founder of BGSE and is a member of Luckey.  Id. ¶ 8.  Plaintiffs assert that Ashley Bullerdick knew BGSE was insolvent when BGSE entered into the acquisition, that she received advances and distributions from BGSE both before and during BGSE's bankruptcy, that she received and enjoyed the benefits of the advances and distributions, and that, along with Bryan Bullerdick, she received

9

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

approximately $2.7 million from BGSE without telling Plaintiffs that BGSE was insolvent.  Id. ¶ 9.  Plaintiffs assert that Ashley Bullerdick traveled to Morgantown, West Virginia, on behalf of BGSE and Luckey, to negotiate claims of vendors.  Id. ¶ 10.

Ashley Bullerdick's declaration, which is attached to her memorandum in support of her motion,[1] states that she is a resident of North Carolina, has only visited West Virginia a few times in her life, and has never visited West Virginia for the purpose of conducting business.  A. Bullerdick Decl., ECF No. 168-1, at ¶¶ 1-2.  She has never owned real property in West Virginia.  Id. ¶ 16.  Prior to 2010, she accompanied her husband on two or three occasions when he traveled to West Virginia for work, at a time when he was employed by FCX Systems.  Id. ¶ 2.  On or around June 1, 2022, she and her husband were driving to Pittsburgh, Pennsylvania, on a personal trip, and they stopped in Morgantown so that he could show her the BGSE manufacturing plant.  Id.  She spent no more than a few hours at the plant, mostly waiting for him to finish his business there.  Id.  She did not do any work on behalf of BGSE or Luckey while at the plant; she was only there because her husband wanted to show her where he worked.  Id.

---

[1] A declaration by Bryan Bullerdick is also attached.  See ECF No. 168-2.

IMS V. LUCKEY ET AL.                                              1:22-CV-12

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]

Ashley Bullerdick's declaration also states that she has never negotiated any vendor contracts on behalf of BGSE or Luckey, in West Virginia or elsewhere. Id. ¶ 4. It states that she has had "very limited involvement" with BGSE and Luckey, and since 2001, she has been a stay-at-home mother. Id. ¶ 6. Her husband established BGSE in October 2011, with Ashley as a 60% owner and his business partner Scott Dils ("Dils") as a 40% owner. Id. ¶ 7. She had no formal involvement with the management of BGSE — it was managed by Bryan Bullerdick and Dils. Id.

Ashley transferred her ownership interest in BGSE to her husband in 2015, and since then, she has not been a member of BGSE. Id. ¶ 8. She has never communicated with anyone in West Virginia on behalf of BGSE or Luckey in an official capacity. Id. ¶ 9. Bryan Bullerdick established Luckey in February 2021, and he and Ashley Bullerdick each owned 50% of the company. Id. ¶ 10. Bryan Bullerdick was, and is, the manager of Luckey. Id. Ashley Bullerdick transferred her ownership in Luckey to her husband at some point in 2023. Id. She avers that she never had any involvement with Luckey's business beyond being a passive owner for that short period. Id. She is not involved in managing the ongoing manufacturing business at Luckey. Id. ¶ 11. She was not involved in the negotiation, execution, or implementation of the agreements at issue in this case. Id. ¶ 13. She did not know of

11

IMS V. LUCKEY ET AL.                                          1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

the agreements when they were executed or the circumstances surrounding them. Id. Ashley Bullerdick has never met or communicated with Bryan Henry, Tammy Henry, or, to her knowledge, any employee of IMS. Id. ¶ 14. She was not involved in any decisions regarding Bryan Henry's employment at BGSE. Id. ¶ 15.

### IV.   DISCUSSION

Ashley Bullerdick moves to dismiss the third supplemental complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court finds that the Court lacks personal jurisdiction over the claims against her.

"To establish personal jurisdiction, a plaintiff must show that 'the defendant's actions satisfy West Virginia's personal jurisdiction statutes' and that the exercise of jurisdiction is consistent with 'federal due process.'" State ex rel. Third-Party Defendant Health Plans v. Nines, 852 S.E.2d 251, 259 (W. Va. 2020) (internal punctuation omitted) (quoting Nezan v. Aries Techs., Inc., 704 S.E.2d 631, 637 (W. Va. 2010)). In West Virginia, the two questions merge:

> Because the West Virginia long-arm statute is coextensive with the full reach of due process, . . . it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. . . . Rather, the statutory

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

inquiry necessarily merges with the Constitutional inquiry.

In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997) (internal citations omitted). To satisfy constitutional due process, "a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice."' Syl. Pt. 6, State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson, 497 S.E.2d 755 (W. Va. 1997) (citations omitted). There are two kinds of personal jurisdiction: (1) "general" or "all-purpose" jurisdiction, and (2) "specific" or "case-linked" jurisdiction. See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021). This Court lacks both general and specific jurisdiction over the claims against Ashley Bullerdick.

### A.    General Jurisdiction

The exercise of general jurisdiction over a defendant requires contacts between the defendant and the forum state that are so "'continuous and systematic' as to render them essentially at home in the forum State." Goodyear v. Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 317 (1945)). Here, nothing before the Court indicates that Ashley Bullerdick's contacts with the State of West Virginia are

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

so continuous and systematic as to render them essentially at home here.  Accordingly, general jurisdiction does not exist.

### B.    Specific Jurisdiction

To determine whether specific jurisdiction exists, the Court examines "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (citation omitted).  Here, the Court finds that these requirements are not satisfied.  With respect to the first prong, the relationship between the defendant and the forum "must arise out of contacts that the defendant [her]self creates" with the forum.  Clarke v. Tango Networks, Inc., Case No. 2:21-cv-00546, 2021 WL 6095328, at *7 (S.D.W. Va. Dec. 23, 2021) (Johnston, J.) (citations and internal quotation marks omitted).

Plaintiffs state that they are proceeding against Ashley Bullerdick under the theory of conspiracy jurisdiction.  By asserting conspiracy jurisdiction, Plaintiffs are effectively conceding that Ashley Bullerdick does not have sufficient contacts with the State of West Virginia on her own.  To establish conspiracy jurisdiction over a nonresident defendant, a plaintiff

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY
BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

must make plausibly claim the following: "(1) that a conspiracy existed; (2) the . . . defendant[] participated in the conspiracy; and (3) a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [the forum State] to subject that conspirator to jurisdiction in [the forum State]." Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 329 (4th Cir. 2013) (citations omitted).  To satisfy these requirements, plaintiffs must plead the conspiracy with particularity.  Id. (citation omitted).  Plaintiffs cannot base a "theory of jurisdiction in only supposition and speculation about a conspiracy[.]"  Id. at 324.

Here, the Court finds that Plaintiffs have not alleged with sufficient particularity that Ashley Bullerdick participated in a conspiracy.  First, Plaintiffs assert that they have pled that Ashley Bullerdick and her co-defendants withheld information about BGSE's insolvency from Plaintiffs during the negotiation of the acquisition and further misappropriated BGSE's funds for personal enrichment, to the detriment of Plaintiffs' business, reputations, and financial standings.  The Court rejects this argument because, based on the uncontradicted affidavit, Ashley Bullerdick was not involved in the negotiations.  A. Bullerdick Decl., ECF No. 168-1, at ¶ 13.  Accordingly, she would have no duty to disclose any information to Plaintiffs.

IMS V. LUCKEY ET AL.                                         1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

Second and third, Plaintiffs argue that Ashley's participation in the conspiracy is evidenced by (1) Bryan Bullerdick's sworn statements on February 15, 2023, that she was "general counsel to the direction of the company," the company's "business manager," and "more active now than she's ever been" in the management of BGSE, along with (2) the fact that Ashley founded BGSE and was a member of Luckey.  These facts, even if true, are not enough to show that she participated in a conspiracy.  In HSBC Bank USA, National Association v. Resh, the district court wrote, "[T]hat multiple parties contributed to the appraisals and other financial documents, which allegedly contain false information, does not mean that those parties colluded to provide false information for the purpose of defrauding buyers."  No. 3:12-cv-00668, 2015 WL 4772524, at *9 (S.D.W. Va. Aug. 12, 2015) (Chambers, J.).  Similarly, here, Ashley Bullerdick's alleged role in providing business advice to BGSE in 2023, and her mere status as a member of Luckey or previous member of BGSE, cannot lead to a reasonable inference that she colluded to defraud Plaintiffs in a 2020 transaction.

Fourth, Plaintiffs assert that they have pled that Ashley Bullerdick participated in the conspiracy by receiving approximately $2.7 million over a two-year period.  Mere receipt of payments, however, is insufficient to show participation in a

16

IMS V. LUCKEY ET AL.                                      1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

conspiracy.  See Unspam, 716 F.3d at 330 (holding that receipt of allegedly fraudulent payments "amounts to no more than a bare allegation or logical possibility" of a conspiracy and does "not satisfy the requirements for establishing a conspiracy theory of personal jurisdiction").

Fifth and finally, Plaintiffs assert that Ashley participated in the conspiracy by traveling to West Virginia with her husband to negotiate with vendors on behalf of BGSE.  Ashley Bullerdick's declaration directly contradicts this assertion.  See A. Bullerdick Decl., ECF No. 168-1, at ¶ 4 ("I have never negotiated any vendor contracts on behalf of BGSE or Luckey (whether in West Virginia or otherwise).").

In Lolavar v. de Santibanes, the defendant raising a personal jurisdiction defense filed an affidavit stating, among other things, that he never worked in Virginia, was not a party to a contract with the plaintiffs, never communicated with the plaintiffs except on one social occasion in a different state, and never owned property in Virginia.  430 F.3d 221, 226 n.4 (4th Cir. 2005).  The United States Court of Appeals for the Fourth Circuit noted that the plaintiffs had not filed a counter-affidavit, that defendant's "affidavit stands uncontradicted," and that "[n]othing which is before the Court provides any basis for a finding of personal jurisdiction under a conspiracy theory over [defendant],

17

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

beyond the mere allegation of a conspiracy." Id. at 229. Similarly, here, Ashley Bullerdick has filed a sworn declaration that she has never met Plaintiffs, was not involved with the transactions at issue, and has never transacted any business in West Virginia on behalf of BGSE or Luckey. Plaintiffs have offered no counter-declarations, and Ashley Bullerdick's declaration stands uncontradicted. Overall, Plaintiffs have not pled with sufficiently particularity that Ashley Bullerdick participated in a conspiracy. Because the purposeful availment prong is not satisfied, the Court need not assess the second and third prongs of the specific jurisdiction analysis. The Court lacks personal jurisdiction over the claims against Ashley Bullerdick.

## V.    CONCLUSION

For the reasons discussed above, the Court lacks personal jurisdiction over the claims against Ashley Bullerdick, and her motion to dismiss is **GRANTED** [ECF No. 167]. The claims against Ashley Bullerdick are hereby **DISMISSED**, and she is to be **TERMINATED** as a defendant in this matter.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

IMS V. LUCKEY ET AL.                                                    1:22-CV-12

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHLEY
BULLERDICK'S MOTION TO DISMISS [ECF NO. 167]**

DATED: March 31, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA